Okay, Mr. Moore. Thank you, Your Honors. May it please the Court, I'm Stephen Moore representing Emcare, and before I start, I would also like to reserve time at the end, but I'd like to point out that the appeal is just limited to the EEOC's claim of retaliation on behalf of Luke Trahan. The appeal started with more claims, but it's been just limited, through resolution of the other claims, to just this one claim. And it involves a single issue, should the District Court have granted the renewed motion for judgment as a matter of law on the causation issue as it relates to Luke Trahan. And the claim of retaliation must prove that the decisionmaker who terminated the plaintiff knew about the protected activity at the time of the termination. And there's a lot of case law from the Fifth Circuit on this issue, and we contend that this essential link is nowhere to be found in the record at trial. There is a complete failure of proof showing that the decisionmaker had knowledge. You're talking about Richardson? Yes, Your Honor. Shawn Richardson, the Chief Operating Officer of the Anesthesia Division. And this is not a case where there's conflicting evidence about causation. There's just no evidence on this awareness of protected activity issue. There's just no evidence presented by the EEOC on that point. And it's well settled, if the decisionmaker was not aware of the protected activity, there can be no causal connection and no retaliation claim as a matter of law. And the EEOC's entire argument is that the jury must not have believed the evidence. But again, there's just no evidence on that essential element. It's the EEOC's burden to establish causation. Wasn't there conflicting evidence? I mean, wasn't there two sides to the story and the one side over the other and chose not to believe your client's witnesses versus the other side's witnesses? Not on that issue, Your Honor. The EEOC presented no evidence on causation. So I wouldn't say there's conflicting evidence. They presented no evidence that Mr. Richardson had knowledge of the protected activity. So it's not a situation where they said Mr. Trahan complained to Mr. Richardson and complained. There is no evidence of that in this case at all. And that is the fundamental flaw in this case as it relates to Mr. Trahan. Now, they do — the EEOC offers arguments that, well, Mr. Richardson should have known or could have known because other people had knowledge of the complaints. But the case law here in the Fifth Circuit has addressed very similar circumstances and found in favor of the employer on those issues. And the Lee case versus the Kansas City Southern, as well as Turner's versus Jacob's engineering group, both from the Fifth Circuit, addressed very similar issues here. Both cases find that this causation element was not satisfied. There was insufficient evidence presented. It rejects concepts of, well, generalized knowledge of managers. That's not going to work. You have to show the decision-maker had knowledge. Even if the decision-maker had a conversation, even with H.R. that received the complaint of discrimination, that's still not enough. You have to show that H.R. spoke to the decision-maker about the protected activity. Both of these cases, Lee and Turner, analyze retaliation law and show that speculative inferences are just not sufficient. They don't satisfy the causation element. And what we have here is the EEOC trying to argue, well, they must not have believed Richardson at trial on these issues over here. Well, you still have to present some evidence on the element over here. You can't satisfy an important element with a credibility argument over here. You still have to have evidence to meet that basic... Did they ask him if he knew that Trahan... I'm sorry? Did they ask Richardson whether he knew that Trahan had made reports or complaints? No, Your Honor, they did not. They didn't ask him that? No, they didn't. All right. The record is silent as to his knowledge from any angle. They did not ask that. He didn't say that. Their argument appears to be, they don't call it this, but it's some kind of cat's paw argument where they're trying to say, well, Karen Thornton, who was the head of HR for that division, she had received the complaint. They put on evidence saying that. And their argument is, well, she must have informed Richardson. But there's no speculative, it's not a reasonable inference. The two cases that I mentioned earlier had similar facts and it was previously held by the Fifth Circuit that while you can have reasonable inferences, those would be unreasonable and don't carry the day on the causation of... Was Thornton the HR director? I'm sorry? Thornton. Thornton was the HR director. Was the HR director? Yes. When she received a complaint about sexual harassment, what was she supposed to do with that complaint? Well, she testified at trial, she did not receive the complaint. Okay. But the other side presented evidence that she had received the complaint. So, I mean... You understand my question? Yes. So you're saying she's saying she never got one. So let's take a hypothetical. Right. Hypothetically, she receives a complaint. What is her responsibility relative to a complaint about sexual harassment by an employee? I think hypothetically, had she received the complaint, they would look into the matter. They would conduct an investigation possibly depending on the allegations. Or... a supervisor of the employee who was alleged to have violated the sexual harassment policy. She's not required to report it to anybody else. But he is not... Mr. Richardson is not the top person in the division. I'm talking about my hypothetical. In my hypothetical, she wouldn't report it to a supervisor or a manager of the employee who allegedly committed the violation. Just my hypothetical. Let me just say, there's no evidence of that occurring here. Should she have reported it to the supervisor, that would depend on each company, whether she did that or not. I don't know. That's not in the record here at all. And that's the point I'm making. But I understand... They didn't have a sexual harassment policy. They did have a policy. All right. But the policy just didn't say what you're supposed to do when you get a complaint. It did not mention report it to the supervisor, as I understand. But the policy didn't say what you're supposed to do when you get a complaint. Not at that level of detail. All right. What is your theory, if you have one, of trying to figure out how, from your point of view, the jury went wrong in this case? I'm not suggesting the jury was wrong, but obviously you think so. What was there about the evidence that would have confused or misled the jury to come up with a verdict with which you disagree? I think the jury overlooked the fact that if you believe the plaintiff's version that a complaint was made to HR, the jury stopped and did not analyze whether any evidence of that was communicated to the decision-maker. And in this case, the decision-maker had started in motion the process of before complaints are alleged to have been made. And there was the audit conducted by Ms. Feather to look into the performance. All this is occurring. And the jury hears evidence that HR received a complaint. And they assumed, without any evidentiary basis, that that information made its way over to Mr. Richardson. Was there any kind of instruction to the jury or any argument that your side would have made to inform the jury that the supervisor needed to have known of the complaint? There is no instruction on that element other than the standard instruction on causation that you have for these kind of cases. But, yes, there were arguments that— Well, let me deal with the instruction for a minute. But you're not complaining that there was some jury instruction along those lines that should have been given but wasn't? You're not complaining about that? That's correct, Your Honor. What I'm saying is— You're not complaining that there was an instruction along those lines that was given that should not have been given? We're not complaining about jury instructions. So the jury was properly instructed on the law in connection with what they needed to find on this causal link. I think the problem, though, is that there's a complete failure of proof on this one element, the causation element, because the EEOC did not offer any evidence that Mr. Richardson had knowledge of the protected activity. In the case law that exists, even where someone made a complaint to HR, you cannot assume that that was communicated. And the argument you're making now was made to the jury, wasn't it? Yes. That there was no evidence of a causal link. That argument was made. I believe it was, Your Honor. And it obviously was presented at halftime, then again at the close of all evidence, and then the renewed motion for judgment as a matter of law. The EEOC proceeded under this theory that Richardson must have known or could have known, and that's just a speculative theory as the case law shows here in the Fifth Circuit. Again, the Lee and Turner-Jacobs, Turner v. Jacobs Engineering Group cases address these concepts. Can the jury make a decision based on circumstantial evidence, and what's the difference between speculation and circumstantial evidence, if there is? I mean, where do we say this is just mere speculation or, well, there's circumstantial evidence, and maybe if you look at circumstantial evidence, it's logical to conclude the way the jury did. And can we use circumstantial evidence, or can the jury use circumstantial evidence? Well, some circumstantial evidence can be supportive of causation. For example, the Fifth Circuit has said temporal proximity evidence, but the Fifth Circuit has also said, well, temporal proximity can be evidence, and that's obviously circumstantial. It's not sufficient when there's not been a showing that the decision-maker had knowledge of the protected activity. And all the cases cited by the EEOC on these issues where they're talking about circumstantial evidence, those cases, it's not a disputed issue whether or not the decision-maker had knowledge of the protected activity. The case law here from the Fifth Circuit addresses the concept that, yeah, you can have reasonable inferences, okay, but they have to be reasonable. And making these evidentiary leaps, one person told another, you can't just assume that even if they went to HR. So, Your Honor, to circle back to your question, I think there has to be a showing of some type, some evidence. That's what the case law says. Some evidence has to be proffered that the decision-maker had that knowledge. And the leading case on that, I believe, is the Manning case. Let me address that exact point. Manning v. Chevron Chemical Company from the Fifth Circuit. And the EEOC points to what it calls circumstantial evidence that other employees were also terminated. But the case law that it points to, there the decision-maker already had knowledge of the protected activity. Again, that's not the case. Sotomayor, your initial time has expired, and you've saved time for rebuttal. Thank you, Mr. Moore. Mr. Ramshaw. Good morning, and may it please the Court. Judge Prado, I think, you know, that's an important question, and the answer is yes. Circumstantial evidence can prove any point that a party needs to prove as an element of its claim. So the Supreme Court held in Desert Palace. And in this Court's cases, in Cheney, the Court said, okay, well, he's got this he's got, you know, his best circumstantial evidence that the decision-maker knew is X. They didn't say, oh, we can't look at that because that's substantial. They just said it wasn't appropriate. It wasn't enough. And in Manning, too, they didn't use the term circumstantial evidence, but they clearly looked at something that was not direct evidence. So what did the jury have before it here? What happened between bring-your-child-to-work-day and their termination? On bring-your-child-to-work-day, McKinney makes this very offensive comment about the 15-year-old daughter's breast size. Shaw gets very upset, her mother is very upset, and so three people wind up going together over to HR, Trahan and Shaw and Thompson. The jury could find that in the six weeks between back bring-your-child-day and termination, Richardson and Thornton were working together to try to get rid of these complainers. Thornton testified that they — that she talked with Richardson about firing Trahan and, by implication, Shaw and Thompson, too. Did Thornton deny that three people had come to talk to her about the — Thornton didn't — — about McKinney's remark? Thornton said nobody ever complained about anything except that Shaw — And three people said they went to talk to her. Yes. Yes. So — so Richardson — I mean, Thornton testified that she talked with Richardson about whether — whether there was grounds for firing Trahan. And, in effect, she suggested, well, we've got to paper the files. She said, let's get an audit going. And they didn't audit the whole division. They audited only the two units that those three people were in. Trahan was in — was one of two people in — in recruiting, and Shaw and Thompson were two of three or four people in credentialing. So those — so Panek looks at the credentialers, Feather looks at the — at the recruiters, and then Thornton and Richardson meet again after, you know, after those — after the audits and before the firing. And what did those — what did those audits show? I mean, they — they say they fired them both for poor — poor performance, but there was lots of evidence that their performance was adequate, that — that in — that in the middle of July, Richardson told Trahan, what you're doing is fine, just keep on doing it, that no one warned either of them that they were about to be fired, that they had to shape up or ship out, that Feather — that the audit report that Feather turned in did not have significant criticism of Trahan and said that — in fact, said that he was the go-to guy, that — and — and that — and that he was far better as a recruiter than — than Burrell was. So it — so the — so the jury can find, and that H.R. had a history, this H.R. Department had a history of letting the — letting the supervisor know that an employee had complained, because Feather — Trahan testified that back when he was directly into Richardson, when he went and complained to H.R., Richardson would then start criticizing his performance without any specifics. Would you agree, or do you agree all this that you've mentioned is circumstantial evidence? Is there any direct evidence? No. I know the jury can rely on circumstantial evidence, but would you concede if the decision was made by the jury properly, that it was based on circumstantial evidence and not any direct evidence? Yes. Yeah. It — I mean, the jury could have found that — that Richardson was not the sole decision-maker. That's what he testified, and that's what — that's what Thornton testified. But Thornton also testified to them working together in this direction. So the jury could have found that Richardson and Thornton together decided to terminate them, and that — and that Thornton knew, because there was direct evidence that people had complained to — to Johnson and to her. And she said, if anyone complained to Johnson, he would tell me about it right away. Was there any conflicting evidence where the jury had to make a credibility determination between the witnesses for one side and the other? Slews of it, yes. Whether — there was conflicting evidence about whether McKinney ever didn't — did anything that was sexually offensive to anybody. There was conflicting evidence about whether they — whether the employees who were offended by this complained repeatedly to H.R. and — and whether — and Trey Hanson and Shaw's performance, whether they were really lousy performers or whether they were — were some of the best employees that — in that small division. So, yeah, there was a lot of conflicting evidence. But there was sufficient evidence for them to find that wow, you know, that, you know, after they — after they complained on — on Pregnant Child Day, things fell apart for them pretty quickly and behind the scenes. If there are no further questions. All right. Thank you, Mr. McShaw. Mr. Moore, you can take — Just briefly on the circumstantial evidence issue, again, the — the standard is can you draw reasonable inferences? And if it's unreasonable, then it doesn't carry today. And that's what we have here, and the case law suggests that, that just because an employee makes a complaint to H.R. does not mean it worked its way over to the person who made the decision. There's case law that we've cited that — the one I mentioned earlier, even if there's conversations, determinations occurring, still not sufficient because it is such an important elemental principle that you must have not — the decision-maker must have knowledge. If you don't have that knowledge, then it cannot be said there was retaliation. Thank you, Your Honor. All right. Thank you, Mr. Moore. Your case is under submission, and the Court will take a brief recess before hearing the final two cases.